IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Daniel Gilliland | )<br>)<br>) |
| Plaintiff, | ) Case No._____<br>) |
| v. | )<br>) **COMPLAINT** |
| Contract Land Staff, LLC, and | ) **AND** |
| Enbridge Energy Partners, L.P. | ) **DEMAND FOR JURY TRIAL** |
| Defendants. | ) |

COMES NOW the Plaintiff, Daniel Gilliland, and for his Complaint against the Defendants, states as follows:

### I.  PARTIES AND JURISDICTION

1. Plaintiff Daniel Gilliland is a resident of Evergreen, Colorado.

2. Defendant Contract Land Staff, LLC, (hereafter "CLS") is a Delaware corporation with its principal place of business in Sugar Land, Texas. It is a leading provider of right of way consulting services in the United States, such services including acquisition, training, staffing, and land and real estate administration services.

3. Defendant Enbridge Energy Partners, L.P., (hereafter "Enbridge") is a Delaware corporation with its principal place of business in Houston, Texas. Enbridge describes itself as an industry leader in the generation, transportation and distribution of energy.

4. This action arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq., and the North Dakota Human Rights Act, N.D.C.C. Chapter 14-02.4. The jurisdiction of this court is founded on 28 U.S.C. §1331.

5. Venue is proper in the U.S. District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391(b).

## II.  STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

6. Gilliland was born on October 21, 1938. He started work as a right of way agent for CLS in 1999 and moved across the United States working on various CLS projects between 1999 and 2015. In March 2013, at age 74, Gilliland was assigned the position of Project Manager for CLS in Minot, North Dakota, for the Sandpiper Pipeline Project that was being constructed by Enbridge in a number of states including North Dakota, Minnesota and Wisconsin.

7. Gilliland assembled a team of right of way agents and he and his team made quick progress in obtaining the necessary contracts, easements and legal assignments necessary for Enbridge to lay its pipeline in North Dakota. The quality and speed of the North Dakota right of way team headed by Gilliland far exceeded that of similar CLS right of way teams in Minnesota and Wisconsin.

8. In late 2014, Enbridge sent Darryl Saylor and Mike Bradburn to Minot to oversee the North Dakota portion of the Sandpiper Pipeline Project and supervise Gilliland and his team. Saylor had previously supervised the right of way teams in Minnesota and Wisconsin which were far behind the North Dakota team in obtaining right of way assignments from landowners.

9. Although Gilliland and his right of way team members were technically employees of CLS, in reality Enbridge had absolute control over and responsibility for the performance of their job duties. Decisions regarding the hiring, firing and discipline of CLS employees working on the Sandpiper Pipeline Project in North Dakota were made jointly by CLS and Enbridge but Enbridge had the final say on all such decisions. CLS and Enbridge were effectively joint employers of Gilliland.

10. Within days of his arrival in North Dakota, Saylor asked Gilliland "When are you going to retire?" Gilliland replied "I am not ready to retire, I'm still in good health, I enjoy my job and I plan to continue working." On more than one occasion, Saylor asked Gilliland, "Don't you at your age ever get tired of your job and want to walk away from it?" Between December 2014 and July 2015, Saylor asked numerous questions and made multiple statements, to Gilliland and others, indicating he believed Gilliland was too old and should step away from his job.

11. Bradburn and two other Enbridge employees, Jay Manders and Trevor Seely, also made age-related comments to Gilliland over a period of several months, including comments such as "How old are you anyway?" and "Why don't you retire?"

12. During his work on the Sandpiper Pipeline Project in North Dakota, Gilliland noticed that Enbridge acted in a discriminatory fashion toward minority and female employees of CLS, asking that they be removed from the project even though they were performing their jobs in a satisfactory manner. Gilliland complained about these practices to managers at both Enbridge and CLS and they were clearly unhappy with those complaints.

13. After Saylor and Bradburn arrived in North Dakota, Gilliland noticed that he was being left out of e-mail communications, excluded from meetings, and generally being denied the information he needed to do his job. Gilliland quickly concluded that Saylor, Bradburn and others at Enbridge were doing this to make him look bad and undermine his authority so that he could be pushed out of his job. Gilliland tried to address this lack of communication with both Enbridge and CLS but no action was taken to remedy the situation.

14. On August 2, 2015, Gilliland, then age 76, was informed by Elizabeth Babcock, CLS Officer in Charge, that Enbridge wanted him off the Sandpiper Pipeline Project and that she was therefore terminating his employment effective August 17, 2015. Gilliland was later informed that

3

he was removed from the project because of deficiencies in administrative record keeping related to acquisition of landowner rights, but this was clearly a false and pretextual reason because a) the paperwork and records in North Dakota were properly maintained at all times and b) when Gilliland assumed the role of Project Manager he was specifically told he had no responsibility for the individuals keeping those records and that they were being supervised by Tony Landry, CLS Administrative Manager.

15. After Gilliland was terminated by CLS, he contacted CLS placement advisors to secure another position as a right of way agent or supervisor on another CLS project. Gilliland advised CLS management that he was willing to take a lower position at a lower salary and even relocate at his own expense in order to remain employed by CLS. Even though there were right of way openings at CLS for which Gilliland was well qualified, he was never again offered employment by CLS. Gilliland's vocal expression of concern regarding the discriminatory manner in which he had been treated by both Enbridge and CLS, and the discriminatory practices of Enbridge regarding women and minorities, no doubt contributed to CLS' decision not to place Gilliland on another CLS project.

16. In September 2015, Enbridge contacted the United States Department of Homeland Security and identified Gilliland as a potential threat to Enbridge's pipeline assets. In none of his communications with Enbridge or CLS or anyone else after he was terminated from the Sandpiper Pipeline Project did Gilliland indicate he would harm any Enbridge personnel or property. Enbridge's action in reporting Gilliland to Homeland Security and having him placed on a "watch list" was intentional and malicious defamation of Gilliland's character and professional standing and has no doubt contributed to his inability to find employment in the pipeline and right of way sectors of employment.

17. At the time of his termination in August 2015, Gilliland's total compensation in salary, benefits and per diem payment for expenses was in excess of $200,000 per year. Gilliland has actively and persistently searched for employment since August 2015 but has not been employed since his termination by CLS and Enbridge. As Gilliland has remained in good health and had anticipated working for CLS or another employer until at least age 80, his lost earnings are in excess of $800,000, the exact amount to be proved at trial.

18. On or about May 25, 2016, Gilliland filed a charge of age discrimination and retaliation under the ADEA and Title VII of the Civil Rights Act of 1964 against CLS with the U.S, Equal Employment Opportunity Commission (EEOC). The EEOC investigated the charge and assigned it Charge No. 541-2016-1800.

19. On June 29, 2017, at the request of Gilliland, the EEOC issued its "Notice of Right to Sue" letter on Charge No. 541-2016-1800, advising Gilliland that if he intended to file a lawsuit he needed to do so within 90 days. Gilliland has commenced this action against CLS within that 90-day period.

20. On or about May 25, 2016, Gilliland filed a charge of age discrimination and retaliation under the ADEA and Title VII of the Civil Rights Act of 1964 against Enbridge with the U.S, Equal Employment Opportunity Commission (EEOC). The EEOC investigated the charge and assigned it Charge No. 541-2016-1801.

21. On June 29, 2017, the EEOC issued its "Notice of Right to Sue" letter on Charge No. 541-2016-1801, advising Gilliland that if he intended to file a lawsuit he needed to do so within 90 days. Gilliland has commenced this action against Enbridge within that 90-day period.

## COUNT ONE

### DISCRIMINATION BY CLS AND ENBRIDGE UNDER THE ADEA

22. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1-21.

23. The decision to terminate Gilliland's employment on the Sandpiper Pipeline Project Due to his age was either a willful violation of the ADEA or a reckless disregard of that statute, and the ongoing failure of CLS to offer Gilliland employment for which he is clearly qualified is a similar willful violation of the ADEA or a reckless disregard of that statute.

24. As a direct and proximate result of Defendants' violation of the ADEA, Gilliland has suffered a loss of past and future salary and benefits in an amount in excess of $800,000, the exact amount to be proved at trial, and liquidated damages in an amount equal to this loss of past and future salary and benefits.

25. Gilliland is also entitled to an award of his reasonable attorney fees in this matter pursuant to 29 U.S.C. § 626(b).

## COUNT TWO

### DISCRIMINATION BY CLS AND ENBRIDGE UNDER THE NORTH DAKOTA HUMAN RIGHTS ACT

26. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1-25.

27. The decision to terminate Gilliland's employment on the Sandpiper Pipeline Project due to his age and the ongoing failure of CLS to offer Gilliland employment for which he is clearly qualified are actions in violation of the North Dakota Human Rights Act, N.D.C.C. Chapter 14-02.4

28. As a direct and proximate result of Defendants' violation of the North Dakota Human

Rights Act, Gilliland has suffered a loss of past and future salary and benefits in an amount in excess of $800,000, the exact amount to be proved at trial.

29. Gilliland is also entitled to an award of his reasonable attorney fees in this matter pursuant to N.D.C.C. § 14-02.4-20.

## COUNT III

### RETALIATION BY CLS AND ENBRIDGE UNDER THE ADEA AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

30. Plaintiff re-alleges and incorporates herein the allegations set forth in Paragraphs 1-29.

31. CLS and Enbridge retaliated against Gilliland by terminating his employment as a result of his complaints about age discrimination and his complaints about the sex and race discrimination he observed on the Sandpiper Pipeline Project.

32. CLS further retaliated against Gilliland by refusing to offer him employment on projects even though it had job openings for which he was clearly qualified.

33. Enbridge further retaliated against Gilliland when it disparaged his reputation and reported him as a security risk to the U.S. Department of Homeland Security.

34. These actions on the part of CLS and Enbridge were willful, deliberate, intentional, malicious, and calculated to cause financial loss to Gilliland as well as physical and emotional injury in the form of depression, anxiety and emotional distress.

35. As a direct and proximate result of Defendants' retaliatory acts in violation of the ADEA and Title VII of the Civil Rights Act of 1964, Gilliland has suffered a loss of past and future salary and benefits in an amount in excess of $800,000, the exact amount to be proved at trial, and unspecified compensatory damages.

36. As direct and proximate result of Defendants' willful and intentional retaliatory acts in

violation of the ADEA and Title VII of the Civil Rights Act of 1964, Gilliland is entitled to punitive damages under Title VII of the Civil Rights Act of 1964.

37. Gilliland is also entitled to an award of his reasonable attorney fees in this matter pursuant to 29 U.S.C. 626(b) and 42 U.S.C. 2000e-5(k).

**WHEREFORE**, Plaintiff Daniel Gilliland prays for judgment against Defendants as follows:

1. For lost salary and benefits in an amount in excess of $800,000, or such other amount as is proved at trial;
2. For liquidated damages in an amount equal to the lost salary and benefits proved at trial;
3. For compensatory damages for his physical and mental injuries;
4. For punitive damages in an amount to be determined by the jury;
5. For an award of his reasonable attorney fees incurred in this action;
6. For an award of his costs and disbursements herein;
7. For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Daniel Gilliland hereby demands a trial by jury of the maximum number of jurors permitted by law.

Dated this 15 day of September, 2017.

_____
Leo F.J. Wilking (ND #03629)
Wilking Law Firm, PLLC
3003 32nd Ave. S., Ste. 240
P. O. Box 3085
Fargo, North Dakota 58108-3085
Phone: (701) 356-6823
lwilking@wilkinglaw.com
**ATTORNEY FOR PLAINTIFF**